Jaquione **JOHNSON**, Plaintiff,

v.

**BRYCO ARMS**, et al., Defendants.

**Joan Truman Smith**, Plaintiff,

v.

**Bryco Arms**, et al., Defendants.

Nos. 03 CV 2582, 02 CV 3029.

United States District Court,
E.D. New York.

Nov. 22, 2004.

---

Law Office of Elisa Barnes, by Elisa Barnes, Esq., New York, NY, for the Plaintiff Joan Truman Smith.

Taub & Marder, by Alison G. Fabella, Esq., New York, NY, for the Plaintiff Jacquione Johnson.

Renzulli, Pisciotti & Renzulli, LLP, by John F. Renzulli, Esq., Leonard S. Rosenbaum, Esq., New York, NY, for the Defendant Atlantic Gun & Tackle, Inc.

Lester, Schwab, Katz & Dwyer, LLP, by Paul L. Kassirer, Esq., Allison A. Snyder, Esq., New York, NY, Saiber, Schlesinger, Satz & Goldstein, LLC, by Christopher M. Chiafullo, Esq., Newark, NJ, for the Defendant Acusport Corp.

## MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

### I. Introduction

This is an action in tort arising from the so-called "Wendy's Massacre." Criminals entered a Wendy's food store and attempted to kill all of the employees by shooting each of them in the back of the head at point-blank range; five of the seven victims died. Harmed by the event, plaintiffs sue the distributor and retailer of the gun, claiming that it fell into the hands of the criminals because of defendants' negligence. At issue at the discovery stage is what records of the retailer should be made available to plaintiffs. To protect the privacy of most gun purchasers, while providing enough data to permit plaintiffs an opportunity to prove their case, for reasons indicated below, only some retail sales records will be revealed.

### II. Facts

In prior phases of the controversy, gun tracing databases of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") were made available to the parties. *See Johnson v. Bryco Arms*, Nos. 03–CV–2582, 02–CV–3029, 00–CV–3641, 2004 WL 1670062, at *1 (affirming Magistrate Judge's order directing disclosure of certain firearms tracing and licensing data, finding that there was "no indication that any privilege, law enforcement or otherwise, would be affected by the release of the requested data pursuant to the terms of a protective order."); *see also In re Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 04–CV–3738 (2d Cir. Aug. 30, 2004) (denying writ of mandamus seeking an order compelling the district court "to rescind its order compelling the Bureau to disclose law enforcement firearms-related data pursuant to subpoenas issued for plaintiffs in civil litigation to which the Bureau is not a party.").

Each handgun has a number stamped on it showing the manufacturer and other data. A "trace" usually is originated by a request from a law enforcement agency to the ATF which contacts the manufacturer based on the gun's number. The manufacturer can tell from its records the name of the distributor, the distributor can tell from its records the name of the retailer, and the retailer can tell from its records the purchaser. This trace information is assembled by the ATF into complex databases and information is then supplied to the inquiring law enforce-

ment agency about the ownership history of the traced guns.

In supervision of discovery the Magistrate Judge directed the retailer, defendant Atlantic Gun and Tackle ("Atlantic"), to turn over acquisition and disposition ("A & D") records and Firearms Transaction Records, ATF 4473 forms ("4473 forms"), from the period May 1997 to May 2000. A & D records contain information about the acquisition and disposition of particular firearms. Acquisition information identifies a firearm's source—*e.g.*, another retailer, a distributor or a manufacturer. Disposition information identifies its purchaser. 4473 forms are distinct from A & D records. Federal law requires that an unlicensed firearms purchaser at retail complete a 4473 with purchaser information including, but not limited to: 1. name; 2. address; 3. place of birth; 4. height; 5. weight; 6. gender; 7. birthdate; 8. social security number (optional); 9. race (ethnicity); 10. state of residence; 11. country of citizenship; and 12. INS-issued alien number, if the purchaser is not a citizen of the United States. The present form reads as follows:

OMB NO. 1512-0129

### DEPARTMENT OF THE TREASURY
#### BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## FIREARMS TRANSACTION RECORD PART I - OVER-THE-COUNTER

Transferor's Transaction Serial Number

**WARNING:** You may not receive a firearm if prohibited by Federal or State Law. The information you provide will be used to determine whether you are prohibited under law from receiving a firearm.
Prepare in original only. All entries must be in ink. Read the Important Notices, Instructions and Definitions on [...]

**Section A - Must Be Completed Personally By Transferee (Buyer)**

1. Transferee's Full Name (Last, First, Middle)

2. Residence Address (No., Street, City, County, State, Zip Code; cannot be a post office box)

3. Place of Birth (City, State or foreign country)

4. Height _____ Weight _____

6. Birth date Month _____ Day _____ Year _____

7. Social Security Number (Optional, but will help prevent misidentification.)

8. Race (Ethnicity) (Check one or more boxes)
- [ ] American Indian or Alaska Native
- [ ] Black or African American
- [ ] Native Hawaiian or Other Pacific Islander
- [ ] Hispanic or Latino
- [ ] Asian
- [ ] White

9. What is your State of residence (if any)? _____ (See Definition 5. If you are not a citizen of the United States, you have a State of residence only if you have resided in a State for at least 90 days prior to the date of this sale.)

10. What is your country of citizenship? (List more than one, if applicable.) _____

11. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

**Certification Of Transferee**

12. Answer questions 12a through 12l by writing "yes" or "no" in the boxes to the right of the questions.

a. Are you the actual buyer of the firearm(s) listed on this form? Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you. (See Important Notice 1 for actual buyer definition and examples.)

b. Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? (An information is a formal accusation of a crime by a prosecutor. See Definition 3.)

c. Have you been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? (See Important Notice 6, Exception 1.)

d. Are you a fugitive from justice?

e. Are you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, narcotic drug, or any other controlled substance?

f. Have you ever been adjudicated mentally defective (which includes having been adjudicated incompetent to manage your own affairs) or have you ever been committed to a mental institution?

g. Have you been discharged from the Armed Forces under dishonorable conditions?

h. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? (See Important Notice 1.)

i. Have you been convicted in any court of a misdemeanor crime of domestic violence? (See Important Notice 6, Exception 1 and Definition 4.)

j. Have you ever renounced your United States citizenship?

k. Are you an alien illegally in the United States?

l. Are you a nonimmigrant alien? (See Definition 6.)

13. If you are a nonimmigrant alien, do you fall within any of the exceptions set forth in Important Notice 6, Exception 2?
Yes [ ]    No [ ]    Not applicable [ ]    (If "yes," the licensee must complete question 18c.)

I certify that the above answers are true and correct. I understand that answering "yes" to question 12a when I am not the actual buyer of the firearm is a crime punishable as a felony. I understand that a person who answers "yes" to any of the questions 12b through 12k is prohibited from purchasing or receiving a firearm. I understand that a person who answers "yes" to question 12l is prohibited from purchasing or receiving a firearm, unless the person also answers "yes" to question 13. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of law. (See Important Notice 8.)

14. Transferee's Signature

15. Date

ATF F 4473 (5300.9) PART I (10-2001) PREVIOUS EDITIONS ARE OBSOLETE

540

SAMPLE

**Section B - Must Be Completed By Transferor (Seller)**

16. Type of firearm(s) to be transferred:
☐ Handgun  ☐ Long Gun  ☐ Both

17. Location of sale if at a gun show. (See Instruction to Transferor 13.)

_____ (City, state)

18 a. Type of Identification (e.g., driver's license or other valid government-issued photo identification.)

Number on Identification: _____

Expiration Date of Identification (if any) _____

18 b. Aliens only: Types and dates of additional required identification (e.g., ... See Instruction to Transferor 2.)

18 c. Nonimmigrant aliens only: Type of documentation ... to the Nonimmigrant alien prohibition (e.g., hunting license/permit, waiver. See Instruction to Transferor 3.)

| Question 19, 20, or 21 Must Be Completed Prior To The Transfer Of The Firearm(s) (See Instructions to Transferor 5-7.) | |
|---|---|
| 19a. The transferee's identifying information in Section A ... was transmitted to NICS or the appropriate state agency on ____ (Date). | 19b. The NICS or state transaction number (if provided) was. |
| 19c. The response initially ... NICS or appropriate state agency was: ☐ Proceed ☐ Denied ☐ Delayed | 19d. If initial NICS or state response was "Delayed" the following response was received from NICS or the appropriate state agency on ____ (Date). ☐ Proceed ☐ Denied ☐ No resolution was provided within 3 business days. |

19 e. The name and Brady identification number of the NICS examiner (if provided) ____ (name) / ____ (number) (optional)

20. ☐ No NICS check was required because the transfer involved only NFA firearm(s). (See Instruction to Transferor 7.)

21. ☐ No NICS check was required because the buyer has a valid permit which qualifies as an exemption to NICS (See Instruction to Transferor 7.)

State Permit Type: _____   Date of Issuance _____

Expiration Date (if any) _____   Permit Number _____

**Section C**

If the transfer of the firearm(s) takes place on a different day from the date that the transferee signed Section ..., transferee must complete Section C immediately prior to the transfer of the firearm(s). (See Instruction to Transferee 3 & Instruction to Transferor ...)

I certify that the answers I provided to the questions in Section A of this form are still true and correct.

22. Transferee's Signature                                23. Date

**Section D**

| 24. Manufacturer and/or Importer | 25. Model | 26. Serial Number | 27. Type (pistol, revolver, rifle, shotgun, etc.) | 28. Caliber or Gauge |
|---|---|---|---|---|
| | | | | |
| | | | | |

**Complete ATF Form 3310 ... For Multiple Purchases Of Handguns (See Instruction to Transferor 11.)**

| 29. Trade/corporate name ... of transferor (Hand stamp may be used.) | 30. Federal Firearms License Number (Hand stamp may be used.) |
|---|---|
| | |

On the basis of (1) the statements in Section A, (2) my verification of identity noted in question 18a and my verification again at the time of transfer (if the transfer does not occur on the same day the verification was noted in question 18a), and (3) the information in the current State Laws and Published Ordinances, it is my belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form to the person identified in Section A

**The Person Actually Transferring The Firearm(s) Must Complete Questions 31-34.**

| 31. Transferor's Name (Please print.) | 32. Transferor's Signature | 33. Transferor's Title | 34. Date Transfer is completed |
|---|---|---|---|
| | | | |

ATF F 4473 (5300.9) PART I (10-2001)

The Magistrate Judge rejected Atlantic's arguments that the documents sought were irrelevant, and, in the alternative, that production of these records without the redaction of personal information would infringe on the privacy rights of retail purchasers. It was the Magistrate Judge's view that the requested records were relevant and subject to discovery because, to the extent that a consumer has a privacy interest in the purchase of a firearm, it is exceedingly narrow.

The Magistrate Judge concluded that the production of Atlantic's "records pursuant to the terms of [a] protective order will adequately protect whatever 'vanishingly small' privacy interests still exist." Oct. 25, 2004 Order at 5.

Atlantic appealed. It argued first, that the documents were irrelevant, and, in the alternative, that this discovery would significantly infringe on the privacy interests of its customers who purchased guns.

Neither side was able to estimate how many guns sold by the defendant retailer had been the subject of a trace based on a criminal investigation of a gun the defendant sold. It was assumed that the vast majority of gun sales did not result in traces.

## III. Law

In their well-known article, *The Right to Privacy,* Warren and Brandeis considered the growing need to protect privacy in modern society:

> The intensity and complexity of life, attendant upon advancing civilization, have rendered necessary some retreat from the world, and man ... has become more sensitive to publicity, so that solitude and privacy have become more essential to the individual; but modern enterprise and invention have, through invasions upon his privacy, subjected him to mental pain and distress, far greater than could be inflicted by mere bodily injury.

Samuel D. Warren & Louis D. Brandeis, *The Right of Privacy,* 4 Harv. L.Rev. 193 (1890). The law has embraced in part the notion of Warren and Brandeis that individuals have a "right to be let alone." *See, e.g., Katz v. United States,* 389 U.S. 347, 350–351, 88 S.Ct. 507, 19 L.Ed.2d 576 (defining "a person's general right to privacy" as "his right to be let alone by other people").

Privacy has been defined as the "claim of individuals, groups, or institutions to determine for themselves when, how, and to what extent information about them is communicated to others." Alan F. Westin, Privacy and Freedom (1967). It has been said to encompass both the "control over acquaintance with one's personal affairs" and "the condition of human life in which acquaintance with a person or with affairs of his life which are personal to him is limited." Hyman Gross, *Privacy and Autonomy, in* Nomos XIII: Privacy 169 (J. Roland Pennock & John W. Chapman eds., 1971).

Increasingly, legal academics and others are puzzling over the challenges to privacy posed by extraordinary scientific and communication advances. This renewed concern, after some hiatus following the Warren and Brandeis article, can be attributed in part to new technologies, among them, computers, the internet, credit cards, and bar coding. *See, e.g.,* Fred H. Cate, *The Changing Face of Privacy Protection in the European Union and the United States,* 33 Ind. L.Rev. 173, 179 (1999) (quoting Marc Rotenberg: "Privacy will be to the information economy of the next century what consumer protection and environmental concerns have been to the industrial society of the 20th century."); Erwin Chemerinsky, Constitutional Law: Principles and Policies 825–27 (2002) (discussing various possibilities for constitutional protection of personal information); Michael Froomkin, The Death of Privacy?, 52 Stan. L.Rev. 1461, 1462 (2000) (quoting Scott McNealy, CEO of Sun Microsystems: "You have zero privacy. Get over it."); Simson Garfinkel, Database Nation: The Death of Privacy in the 21st Century (2000); Mike Hatch, *The Privatization of Big Brother: Protecting Sensitive Personal Information from Commercial Interests in the 21st Century,* 27 Wm. Mitchell L.Rev. 1457, 1473 (2001); Steven Hetcher, *Changing the Social Meaning of Privacy in Cyberspace,* 15 Harv. J.L. & Tech. 149, 150 (2001) (claiming that the most significant public policy concern created by the Internet is the threat to privacy from the increasing flow of personal online data); Richard Posner, Economic Analysis of the Law 46 (5th ed.1998) (conceiving of privacy as a way for individuals to avoid disclosing discreditable information about themselves); William Safire, *Stalking the Internet,* N.Y. Times, May 29, 2000 at A15 (arguing that privacy is a growing issue of importance for all proponents of freedom).

> The prominence of the discussion of privacy in the information age is unsurprising. Advances in technology and corporations' unquenchable thirst for consumer information have substantially eroded the ability of individuals to control their personal data. Scholars have suggested a wide variety of ways of combating the problem, but have not developed a satisfactory conceptual framework for protection of mundane consumer information.

Stan Karas, *Privacy, Identity, Databases,* 42 Am. U.L.Rev. 393, 443–44 (2002). *See also* Vance Packard, The Naked Society (1964)

(arguing that surveillance capabilities interfere with the traditional rights of citizens); Alan F. Westin, Privacy and Freedom (1967) (drawing attention to the general privacy threat posed by public curiosity and surveillance); Arthur R. Miller, Assault on Privacy: Computers, Data Banks, and Dossiers (1971) (examining the threats to privacy caused by the developments in technology while recognizing the benefits of technological achievements); Alan F. Westin & Michael A. Baker, Databanks in a Free Society: Computers, Record–Keeping and Privacy (1972) (asserting that the developments of technology threaten personal privacy).

Stan Karas's recent comprehensive law review article on the subject explores four current theoretical justifications for controlling data collection: (1) the collection of information leads to a quasi-totalitarian surveillance society; (2) control over information is essential to personhood; (3) information is personal property; and (4) the author's own theory, that privacy is the protection of information that expresses individual identities. *See Karas, supra* at 443. He maintains that:

> what we buy is how we present ourselves to the outside world; it represents how we choose to interact with it. When we purchase brands or products coded with a certain personality trait, we provide a blurry but strikingly accurate glance at our private selves to any sophisticated examiner of consumer records. What deserves attention here is not the availability of a record of our purchases, as some privacy activists claim, but the inference that an examiner may make about our consumer preferences. These preferences are expressive, revealing and private.

Karas, *supra* at 398. While instructive, none of the theories explicated in the article need to be adopted as a basis for decision in this case.

### IV. Application of Law to Facts

It is assumed that, in general, a purchaser of any commodity has a desire for privacy. Upon a showing of the need for information about a purchase by criminal law enforcement agents, state or federal, or in civil litigation, that concern of the individual may be overborne—more readily, possibly, in criminal litigation. In this period of internet snooping into private people's lives and stealing of identities, courts must often balance people's need for privacy against the requirements of our functioning legal system. Balancing is required between effective enforcement of the law and protection of innocent purchasers.

In the present case equilibrium can be achieved by holding that legal purchasers of untraced guns do not yield their right to privacy, but that those who purchased guns that may have been involved in a crime do.

Expressing the concern that even differentiation by tracing might endanger good-faith purchasers, counsel for one of the defendants posed the following question: "What if the gun was legally sold to a legal purchaser ... he took it home and the gun was stolen from him and is now involved in a trace?" Tr. at 12. The implied argument is not persuasive. If someone purchased a gun legally and in good faith—a bona fide purchaser—and it is ultimately stolen and used in a crime, he is one of those that will be brought into a criminal investigation willy-nilly, somewhat like strolling on the street and getting mugged.

We can hypothesize the case of trace data that should not be limited in discovery. Let us assume that X is an upstanding woman in the community. Without fanfare she purchases a gun for the household because she is concerned about her privacy and protection. She is entitled to the gun. The gun is stolen and used in a murder. Her identity and her background are going to be investigated by the police, even though she was a law-abiding purchaser in good faith. If the murder results in a civil suit there is also a strong interest in knowing who bought the gun that overrides considerations of her personal privacy. *Cf. United States v. Marchant*, 55 F.3d 509, 516 (10th Cir.1995) (noting the legislative distinction between law-abiding citizens and persons prohibited from possessing or receiving firearms).

Some purchases may be of more concern than others to some people. Karas has argued, for instance, that "[e]ven the most

ardent direct marketers would have a hard time justifying sharing information about purchases of pregnancy kits, [etc.] . . . ." *Supra* at 397. While the purchase of a gun is by no means discreditable, at least some members of the public may be more interested in the protection of their privacy in this kind of purchase than they would be in the purchase of a particular brand of toothpaste. The purchaser may not wish the public to know she had a firearm because such knowledge may increase the risk that it will be stolen, or even that an intruder into her home may tend to shoot without hesitating if he knows the householder has a gun. The purchase of a firearm—because of the social, political, and moral controversy that may surround it in our culture—arguably merits heightened protection.

## V. Conclusion

The Magistrate Judge's October 25, 2004 order directing defendant Atlantic to turn over all A & D records and 4473s from the period May 1997 to May 2000 is amended to include all A & D records and any 4473 forms that either resulted in traces or did not themselves result in a trace but were made by a person on the same day as he or she purchased another firearm that did result in a trace. Social security, driver's license and alien registration numbers will be redacted to exclude all but the last four digits.

Discovery remains subject to the extensive protective order in place, to be modified as needed by the Magistrate Judge. Should further preparation for trial reveal the need for modification of this order, either party may move for relief before the Magistrate Judge.

SO ORDERED.